UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| APPALACHIAN REGIONAL HEALTHCARE, INC., | ) ) ) |
| Plaintiff, | ) Civil Action No. 10-57-ART ) ) |
| v. | ) ) **MEMORANDUM OPINION &** |
| UNITED STEELWORKERS INTERNATIONAL UNION, et al., | ) **ORDER** ) ) |
| Defendants. | ) |

\*\*\* \*\*\* \*\*\* \*\*\*

When does an arbitrator act outside the scope of his authority? This action addresses that very question. When an arbitrator decides the question presented to him, and only that question, an arbitrator has acted within his authority. In such cases, it is not for a reviewing court to come along and disturb that decision. Here, the plaintiff Appalachian Regional Healthcare ("ARH") challenges an opinion and award of an arbitrator, arguing the arbitrator reached an issue not within the scope of his authority. The plaintiff is wrong.

### BACKGROUND

The flash of blue lights in one's rearview mirror usually means one of two things—help has arrived or someone has found themselves on the wrong side of the law. On August 9, 2008, Lonnie Conley ended up in the latter category. Conley had worked as a licensed practical nurse at ARH since October 2003. R. 1, Attach. 24 at 7. On that particular August night, police pulled Conley over while riding his motorcycle near the ARH campus. Conley drove into the ARH parking lot where police subsequently arrested him for driving while intoxicated. *Id*. at 7-8.

Conley's troubles did not end with the DUI. Despite being off-duty at the time, ARH officials suspended Conley on August 11 pending resolution of the criminal charges filed against him. *Id*. at 8. Conley never grieved this suspension with ARH, in effect accepting the penalty as imposed.

Before Conley's arrest, ARH implemented a policy whereby all exterior doors to the hospital, with the exception of the front doors, remained locked between 8:00 p.m. and 6:00 a.m. R. 16, Attach. 1 at 4. This policy ensured that security staff could properly monitor the facility during the late shifts. *Id*. at 7. Simply having this policy, however, did not mean all employees strictly adhered to it. On the night of August 26, 2008, just over two weeks after his suspension for the DUI charge, Conley took it upon himself to deliver a pot of chili to employees working the night shift. When he arrived, Union president Wilkerson let Conley in through a side entrance, bypassing the front monitored entrance. *Id*. at 8. ARH policy requires that suspended employees stay off ARH property during their suspensions. *Id*. at 6. While some question existed as to whether ARH made Conley aware of this restriction, an arbitrator, nevertheless, found that Conley should have known of it. R. 1, Attach. 24 at 16. By being on ARH property, even for the purpose of bringing dinner to his coworkers, Conley violated the policy.

Unfortunately for Conley, an administrative patrol happened to come by just as he delivered his chili to the assuredly hungry employees. R. 16, Attach. 1 at 7-8. The patrol demanded that Conley leave the premises, which he did without incident. *Id*. at 8. But this matter was far from over. The following day, ARH determined that Conley's being on ARH property during his suspension constituted insubordination and a violation of ARH security

policy. *Id*. at 8. ARH soon thereafter discharged Conley from his position with the hospital. Wilkerson, who allowed Conley to enter the facility, only received a one-day suspension for his involvement. *Id*. at 9. Conley then filed a grievance over his discharge. *Id*. To be clear, Conley did not grieve his earlier suspension resulting from the August 9 arrest—he only grieved the later discharge. The Union (acting on Conley's behalf) and ARH proved unable to resolve the dispute through the grievance procedure set forth in the collective bargaining agreement and submitted the dispute to arbitration.

***The arbitration.***  The parties presented the following question to the arbitrator: Was Conley's discharge for just cause and, if not, what should the remedy be? R. 1, Attach. 24 at 5. Because the collective bargaining agreement did not define "just cause," the arbitrator used a general just cause standard. *Id*. at 11. That standard involved two questions: First, did the employer prove by clear and convincing evidence that the grievant was guilty of the misconduct of which he was accused? Second, was the discharge penalty appropriate to the offense in light of any mitigating factors or extenuating circumstances reflected by the record as a whole? *Id*.

The arbitrator found Conley to be in violation of the ARH Employee Termination Policy prohibiting insubordinate behavior. While discharge stood as a possible remedy for such a violation, the arbitrator went on to question whether it, in fact, constituted an appropriate remedy under the circumstances in this case. In his words, did the penalty fit the crime? *Id*. at 19. He concluded it did not. In reaching this decision, he considered the following mitigating factors and extenuating circumstances: (1) Conley received no negative evaluations or discipline during his five years with ARH; (2) Conley did not have adequate forewarning of the penalty of

3

discharge for his conduct; (3) no evidence existed that Conley visited the hospital for an improper purpose or that the delivery of chili caused harm of any kind; (4) Conley was punished for an action (delivering food) that would have been tolerated or authorized had he been a relative or friend of an ARH employee; (5) the Union president received only a one-day suspension for his role, leading to the conclusion that such an action would not normally result in discharge; and (6) the decision to suspend Conley on August 11 was not justified. *Id*. at 19-21. This entire chain of events sprung from that August 11 suspension. And when the arbitrator considered the facts surrounding the suspension, he found that Conley's conduct did not in fact violate the ARH policy at issue. Conley never possessed or consumed alcohol at work. *Id*. at 21. He never reported to work intoxicated. *Id*. He simply had too much to drink at a party and happened to be pulled over in his employer's parking lot. *Id*. The suspension was, in his words, "clearly without justification." *Id*. at 21. And when looking at *all* of these factors, the arbitrator concluded Conley should not have been discharged. Thus, the arbitrator found in favor of the Union and reinstated Conley without back pay. Conley did not merit back pay, the arbitrator found, because he willfully violated company policy by re-entering ARH after he had been suspended. *Id*. at 22.

ARH now challenges the arbitrator's opinion and award based on the arbitrator's consideration of the August 11 suspension. R. 16.

## DISCUSSION

This case comes down to one question: Did the arbitrator act within the scope of his authority when he decided the exact question presented to him?

4

The parties asked the arbitrator to determine whether ARH had just cause to discharge Conley. R. 1, Attach. 20 at 4; R. 1, Attach. 24 at 11. The arbitrator determined that ARH did not have just cause to discharge Conley. R. 1, Attach. 24 at 22. Period. Finito. Case closed. He took the question presented, answered that question, and sent the parties on their way.

Whether he flipped a coin or provided the parties with a well-reasoned and thorough opinion (as he did here), the path he took in reaching that decision is not up for review when he answered the question presented and only that question. *Mich. Family Res., Inc. v. Serv. Employees Int'l Union Local 517M,* 475 F.3d 746, 755 (6th Cir. 2007) (en banc) (stating that even if an arbitrator chooses the wrong path in justifying an award, that does not give a court the authority to vacate it). Courts review outcomes, not opinions, in arbitration cases. *Id*. The outcome is that Conley should be reinstated without back pay. The opinion includes the arbitrator's finding that Conley's earlier suspension was without justification. Because the outcome aligns with the question presented, this Court will not undertake a review of the arbitrator's opinions.

But how can this be so? Does the arbitrator's reasoning matter at all? Quite simply, no. Arbitrators have no obligation to memorialize the reasons for their awards in written opinions. *See United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 598 (1960). If the Court steps in and vacates awards based on flawed chains of reasoning, it will only encourage arbitrators to skip the process of explaining their decisions altogether. *Michigan Family Resources*, 475 F.3d at 755-56 (citing *Enterprise Wheel*, 363 U.S. at 598). Had the arbitrator in this action issued a one-sentence decision declaring that just cause did not exist for Conley's

5

discharge and reinstating him without back pay, this case would not be before the Court today. Yet the arbitrator chose to explain the reasoning behind his decision in significant detail—something courts should encourage not discourage. *See id.*

Courts evaluate arbitration awards under "one of the narrowest standards of judicial review in all of American jurisprudence." *Uhl v. Komatsu Forklift Co.*, 512 F.3d 294, 305 (6th Cir. 2008). Reviewing courts do not consider the merits of an award, weigh the equities, or interpret collective bargaining agreements. *Champion Int'l Corp. v. United Paperworkers Intern. Union*, 779 F.2d 328, 334 (6th Cir. 1985) (citing *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 569 (1960)). Instead, courts must accord great deference to the decisions reached by arbitrators. This "extraordinary deference given to an arbitrator's ultimate decision on the merits applies equally to an arbitrator's threshold decision that the parties have indeed submitted a particular issue for arbitration." *Id.* at 335; *Equitable Res., Inc. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO/CLC,* No. 08-6444, 2010 WL 3582920, *8 (6th Cir. Sept. 16, 2010).

Here, the parties bargained for this arbitrator's decision on the issue of Conley's discharge and that is what they got. *Michigan Family Resources,* 475 F.3d at 756. No more, no less. Thus, his decision is entitled to "extraordinary" deference and any "request for judicial intervention should be resisted even [if] the arbitrator made 'serious,' 'improvident' or 'silly' errors in resolving the merits of the dispute." *Id.* at 752 (quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 40 (1987)).

ARH contends, however, that the arbitrator went beyond the scope of his authority by

6

considering the merits of the August 11 suspension. By saying the suspension was "without justification," ARH argues the arbitrator effectively revisited it. And only Conley's later discharge was placed before the arbitrator by the parties. In its view, the arbitrator should have made no determination with respect to the suspension. Conley never challenged it under the collective bargaining agreement, ARH argues, so it should have been taken as given.

While the phrase "without justification" standing alone implies the arbitrator made some decision regarding the suspension, his opinion reveals this not to be the case. He only considered the suspension as a factor in reaching his decision that just cause did not exist for the discharge. He even considered it to be the most important factor. R. 1, Attach. 24 at 20. But in the end, it was only a factor. He did not overturn or reverse the suspension. That is critical. To have done so would have been error. Everyone is in agreement on this point. He simply chose to consider the underlying merits when deciding whether the discharge was proper.

The terms of the award also prove the arbitrator did not reach the suspension. Had he reversed or overturned it, he would have been required to order back pay, as no punishment after the suspension would have been justified. The arbitrator's final decision *not* to award back pay for a period spanning more than a year demonstrates his recognition of this fact. He ultimately left the suspension undisturbed.

Also, merely considering the suspension in the context of the decision to discharge Conley does not mean the arbitrator believed the issue to be before him. To understand the seriousness of Conley's later violation, it seems unavoidable that the arbitrator would consider his earlier suspension. Consider this example: Employee Joe is suspended for sexually

7

harassing another employee. He is not allowed to return to the premises during the term of his suspension. But, Joe decides that maybe the harassed employee will not pursue the harassment claim if he cooks that employee chili. Thus, Joe sneaks into work with a pot of chili for the harassed employee. That is an extremely serious violation. But, the seriousness of the violation only makes sense when considering the context of the earlier suspension. Surely, in providing reasoning, there is nothing wrong with the arbitrator considering the facts underlying the suspension. Indeed, no one objected when he considered those facts at the hearing. R. 1, Attach. 20, 21. To force the arbitrator to make his decision in a vacuum without considering the suspension would not permit him to consider the actual seriousness of the later violation. While he may only decide the issue in front of him, he need not put on blinders to the facts of the case as a whole.

**CONCLUSION**

An arbitrator only exceeds his authority when the collective bargaining agreement does not commit the dispute to arbitration. *Michigan Family Resources,* 475 F.3d at 757. The collective bargaining agreement committed the question of Conley's discharge to arbitration. R. 1, Attach. 20 at 4. And that is the question that the arbitrator answered. He concluded that Conley should not have been discharged, and ARH should reinstate him without back pay. *Id*. at 22. It is not the job of this Court now to dissect the arbitrator's reasoning or question the path he took in reaching his conclusion. His award must be enforced.

Accordingly, it is **ORDERED** that:

(1)      The defendant Union's motion for summary judgment, R. 15, is **GRANTED**.

(2) The plaintiff ARH's motion to vacate the arbitrator's award, R. 16, is **DENIED**.

(3) A separate Judgment will be entered contemporaneously with this Opinion.

This the 15th day of November, 2010.

Signed By:
*Amul R. Thapar* AT
United States District Judge